Good morning, Your Honor. Burke Agapago for the respondents. Keep your voice up, okay? Okay, Your Honor. You're the petitioner, right? Yes. Okay. The equities are great in this case, Your Honor. Counsel, you've got terrific equities. This looks like one of the cases we get where the person is a good citizen in every way except they're not a citizen, as far as I can tell from the record. But I don't understand what you can do about POPA. Yes, Your Honor. I know about POPA. My appeal was basically about policy. It's about policy and the congressional intent. So the congressional intent, when you look at the law, is to avoid respondents from buying time to get benefits. In this case, the respondents didn't buy time. They applied for labor certification by the deadline, which was April 30, 2001, and they were asking to be legalized based on that. The husband was the- Probably would have been, except that the recession put the farmer out of business. Right. There was 9-11 as well. A lot of businesses were not doing good. So based on the inability to pay, I think the taxes were not enough to pay his wages. The case was denied in 2009, February. And I wasn't the attorney. A competent attorney would have appealed that decision. And if there was an appeal, there wouldn't be an NTA. So in this case, I know about the POPA case. But my argument is, as a matter of policy, if the respondent is very diligent and pursues legalization through hiring an attorney and doesn't have a criminal record and pays taxes while he's here as a family life, I think based on these equities, the court should consider if the stop time rule applies at the hearing when they first show up, or does it start- I'm sure the government has good reasons on the other side of the equities. I mean, the basic idea that would be argued the other way is you get in on a program that's supposed to provide essential labor to Americans that Americans can't be found for, particularly operating this complex irrigation equipment. And when they don't need you anymore, you go back home. That would be the argument on the other side of the equities. But I don't see where it matters because I don't see how you can distinguish POPA. And it looks like it's controlling. You got the notice within 10 years and the notice to appear, and it didn't say where and when to appear. And POPA says that's okay. It's still effective. So we're obligated to follow POPA, whether we like it or not. So I need a distinction. Your Honor, the distinction, as I said, you know, I mentioned the congressional intent. That's not a distinction. Because behind the law, the stop time rule behind the congressional intent is to stop from illegals pursuing continuation of the case so that they can get benefits later on. That was my argument. And one of the sons already got DACA, and the other one is going to get DACA as well. The two parents, after President Obama's statement yesterday, would be eligible for at least work permit to stay here for a while. So I'm willing to… Did you talk to the government's attorney about that before court again this morning? Yes, Your Honor. We're willing to have a mediation and request a PD so that this case can be resolved amicably. Does anyone know what it means yet? I listened to it, and he kept saying get right with the law, and I don't know what that means. Which one, Your Honor? I'm sorry. The President yesterday kept saying get right with the law, and I don't know what the phrase get right with the law means. So I don't know whether that has an effect on this. Possibly the regs are already out or have been out for comment or something. I don't know. I think the President meant, Your Honor, if families came here way back, if they came a long time ago, and if they don't have criminal convictions, if they had a family life, paid their taxes and did their dues, they should at least get some work permit instead of getting green cards or citizenship. But they should at least have opportunity to work in the country. Why don't you let us hear from the government's attorney? I'm sorry, Your Honor? Why don't we hear from the government's attorney, and we can get her. Let me just ask a quick question before you sit down, counsel. Is your client still – is he still in the country? Yes. He's here. Okay. Thank you. Okay. Good morning, Your Honors. May it please the Court. My name is Jennifer Singer, and I represent the United States Attorney General, the respondent in this matter. Petitioner seems to concede that POPA is controlling, and it's the government's position that it is. He didn't exactly concede it, but I asked for a distinction a couple times and didn't get one. That's correct. And his main focus of his argument was more for equitable relief or that the stop-time rule didn't apply to his clients because they were somehow diligent in pursuing to legalize their status. But the stop-time rule is not discretionary and absent any type of unfairness in the actual proceedings. Is your department mediating these cases on account of the President's statement yesterday? As of today, I'm sure a lot of cases are going to go into mediation based on what the President said last night. But under the terms of the executive order, I don't know the exact specifics of it. However, when this Court issued an order in February of this year to review the case to see if anything had changed in the matter, our office reached out to Petitioner's counsel. Reached out. You mean telephoned? Called him initially. We reviewed the case, called Petitioner's counsel to see if PD, prosecutorial discretion, under how we've been doing it in the past few months aside from what the President said, stated last night, whether he was interested in pursuing that and whether the children would be interested in pursuing DACA. This morning we spoke. I had no idea that one of the sons was already approved for DACA. Petitioner's counsel was kind of noncommittal and seemingly wanted to proceed on the petition. Last month we again emailed Petitioner's counsel seeing if PD was something he wanted to explore. But absent Petitioner's agreement on PD or their affirmative action on a DACA application. When you reached out, does that mean you phoned and talked to the lawyer? Or does it mean you sent an email saying something? We spoke. I don't know what it means. The briefing attorney spoke with Petitioner's counsel on the phone, and then we had email exchange last month regarding this. You're saying you suggested mediation and the Petitioner turned you down. Inquiring whether if that was something he wanted to pursue and he was noncommittal. But I am willing to put the case into mediation to explore these options. But unless Petitioner's counsel consents, I can't. I'm sure after the President's remarks last night that he would be amenable to mediation. So that's the government's position, that the agency's decision was correct and that we would be amenable to putting the case into mediation. Thank you very much. Thank you, Your Honors. Fourth right. Now, you're amenable to mediation, aren't you? Yes, Your Honor. All right. Okay. We'll confer and we'll likely refer this matter to mediation in our appropriate orders. Or we may just give you 30 days to figure out whether you want to do anything. Okay, Your Honor. We'll do something. Thank you. Thank you. Thank you, Your Honor. The matter is submitted. Thank you, counsel.
judges: Christensen, Kleinfeld, Paez